448 So.2d 28 (1984)
In re ESTATE OF Evelyn Agnes BARKER, Deceased.
Margaret FRANKENBERG, As Personal Representative of the Estate of Evelyn Agnes Barker, Deceased, Appellant,
v.
Jack E. BROUGHTON and Mrs. Jack Lewis, Appellees.
No. AS-115.
District Court of Appeal of Florida, First District.
March 27, 1984.
Rehearing Denied April 23, 1984.
*29 William H. Maness of Maness & Kachergus, Jacksonville, for appellant.
Wayne E. Flowers of Flowers, Hould & Westling, Jacksonville, for appellees.
NIMMONS, Judge.
Margaret Frankenberg, the personal representative of the Estate of Evelyn Agnes Barker, appeals from an order of the lower court denying Frankenberg's petition seeking an order admitting to probate the residuary clause from a prior will which clause she claims was inadvertently omitted from her later probated will. We affirm.
Evelyn Agnes Barker (decedent) died on July 3, 1982. Her will, executed on October 22, 1980, was admitted to probate by order of the lower court on July 12, 1982. The will was a rather brief, straightforward document in proper form and executed in accordance with the statutory selfproving form authorized under Section 732.503, Florida Statutes (1979). It contained a provision "revoking any and all wills heretofore made" by the decedent. It provided for certain specific bequests of jewelry and other personalty to Frankenberg (a niece) and Shirley Carmichael (a grandniece). Article Sixth recited that the decedent had prepared a list of additional personal items and effects and directed the personal representative to distribute such property to the persons indicated on such list. The record does not indicate any description of the items listed or of the names of the listed beneficiaries. Article Seventh consisted of $1.00 bequests to each of four *30 other relatives of the decedent (a nephew, a niece and two grandnephews). The will contained no residuary clause. Frankenberg was named as personal representative.
After the October, 1980, will was admitted to probate, Frankenberg filed a "petition to establish lost or destroyed will." The petition included a copy of an earlier will purportedly executed by the decedent on August 20, 1980. In support of the petition, Frankenberg filed an affidavit of attorney S. Gordon Blalock who drafted the will and supervised its execution, and an affidavit of his secretary who was one of the witnesses. Both affidavits identified the document as a copy of the earlier will executed by the decedent. Apparently, the original of the earlier will could not be located.
The earlier will was very similar to the latter will, but differed in these respects: (1) the earlier will made no bequests or other provision for the four relatives who were named in the latter will as recipients of the $1.00 bequests; (2) the earlier will contained a residuary clause with Frankenberg and her daughter, Shirley Carmichael, named as beneficiaries thereof in equal shares; and (3) the earlier will directed that the personal representative employ Mr. Blalock to perform the necessary legal work in connection with the estate's administration.
The gist of the affidavits submitted in support of Frankenberg's petition was that the absence of a residuary clause from the second will was a mistake. Attorney John London Arnold stated in his affidavit that the decedent came to his office and requested that he prepare a will for her. He further stated that the decedent told him the new will should be the same as the earlier will except that "certain persons were to get only $1.00 because she had heard this was necessary," and that the new will should not include the requirement that Mr. Blalock be employed for the legal work in administering the state. Arnold further stated in his affidavit that, in the preparation of the new will, the residuary clause contained in the earlier will was inadvertently omitted, that he did not see the finished product and that he was not present when Barker returned and executed her new will.
Frankenberg's petition asserted that the omission of the residuary clause from the second will would result in the distribution of the residual estate (approximately $50,000 in real estate and $37,200 in personalty) by intestacy to eleven heirs including the four recipients of the $1.00 bequests instead of to Frankenberg and Frankenberg's daughter, all of which, she says, is contrary to the decedent's intent.
Subsequent to the filing of Frankenberg's petition and supporting affidavits, the lower court entered an order requiring the interested parties to show cause why the earlier will should not be admitted to probate for the purpose of disposing of the residual estate in accordance with the residuary clause of the earlier will. The court held a hearing at which counsel for some of the decedent's heirs at law (including appellees) appeared and opposed Frankenberg's petition. No evidence was presented at the hearing, the hearing consisting solely of arguments of law, the parties apparently content to assume the truth of the facts stated in the affidavits.
Subsequently, the court entered its order finding that the purported copy of the earlier August 20, 1980, will was indeed a true copy of the original which had been executed by the decedent but that the later will effectively revoked the August 20 will in its entirety and that neither the doctrine of dependent relative revocation nor any other legal theory operated to revive the residuary clause of the August 20 will. The court ruled that it would be improper to consider the assertions in Arnold's affidavit regarding the decedent's intent but that even if the court could consider such affidavit, the contents thereof would be insufficient to overcome the presumption that the testatrix understood and approved the terms of the second will when she executed it.
*31 Nothing in the law precludes a testator from disposing of only a portion of his estate by will and allowing the balance to be distributed according to the laws of intestate succession. In Re Stephan's Estate, 142 Fla. 88, 194 So. 343 (1940); Pelton v. First Savings & Trust Co., 98 Fla. 748, 124 So. 169 (1929); 18 Fla.Jur. 2nd Decedent's Property § 383; Annot. 80 A.L.R. 140. Frankenberg is not benefitted in this case by the principle that the law favors any reasonable construction of a will that disposes of all of the testator's property over an interpretation that results in partial intestacy. See In Re Smith, 49 So.2d 337 (Fla. 1950); In Re Gregory's Estate, 70 So.2d 903 (Fla. 1954). There are simply no conflicting provisions of the second will which require construction.
The lower court was quite correct in holding that it was not at liberty to consider extrinsic evidence of the testator's intent regarding revocation of the earlier will. The provisions of the decedent's second will do not necessarily indicate that she did not wish her residuary estate to be distributed to her legal heirs as intestate property. In other words, the $1.00 bequests in her second will to four of her legal heirs do not necessarily indicate an intent to "disinherit" even those four, much less the remaining heirs who were not named either in the $1.00 bequests or otherwise.
But even if we were to construe the provisions of the decedent's second will as exhibiting an intent to disinherit the four $1.00 beneficiaries, such construction would be unavailing to appellant. As stated in In Re Levy's Estate, 196 So.2d 225, 229 (Fla. 3rd DCA 1967):
The remaining question to be determined is whether the testator's son was precluded by law from taking the lapsed legacies as next of kin because the testator in his will stated he "made no provision" for his issue and had never seen him.
In order to cut off an heir's right to succession a testator must do more than merely evince an intention that the heir shall not share in the estate  he must make a valid disposition of his property. Cases so holding are collected in an annotation in 100 A.L.R. 325, where, commenting thereon, it was said (at page 327):
Except as respects the rights of a surviving spouse, the common law gives a testator substantial freedom to dispose of his property by will as he sees fit, without regard to any claims of those who might otherwise take under the rules as to descent and distribution of intestate property. The courts seem to be agreed, however, that this power to disinherit can be exercised only in one way  by making a testamentary disposition of the property inconsistent with the normal course of descent. Accordingly, where some of the property is not disposed of by will, either because of the lapse of proposed legacies or for other reasons, the cases hold that the undisposed-of property will pass to those entitled under the statutes of descent, both where language in the will attempts to exclude such persons altogether from the benefits of the estate, and where the testator does make some provision for the person in question but specifies that such provision shall be all that such person is to receive.
See also In Re Estate of Reid, 399 So.2d 1032 (Fla. 1st DCA 1981).
In any event, without the aid of the proffered extrinsic evidence (principally, attorney Arnold's affidavit) as to what the decedent's intent was, her will is clear as to its meaning and needs no interpretation in order to be implemented.
[I]t is the intention of the testator as expressed in the will that the court should carry into effect, and where the meaning of the words used by the testator is clear, it must be adopted, whatever the inclination of the court may be. The court may not alter or reconstruct a will according to its notion of what the testator would or should have done. Moreover, in the absence of clear legislative *32 intent, the courts will not create or destroy testamentary disposition on the theory that the result accords with the natural desires of the deceased. The court must assume that the testator meant what was said in his will. It is not the purpose of the court to make a will or to attempt to improve on one that the testator has made. Nor may the court produce a distribution that it may think equal or more equitable.
18 Fla.Jur.2d Decedent's Property § 358 at p. 216. See also In Re Estate of Lesher, 365 So.2d 815 (Fla. 1st DCA 1979). Stated another way, the inquiry is not what the testatrix meant to say, but what she meant by what she did say. See In Re Estate of Fairley, 159 N.W.2d 286 (Iowa 1968). Further, appellant's reliance upon Section 732.6005(2), Florida Statutes, dealing with testamentary intent regarding after-acquired property is misplaced. That section has no application to the case at bar.
Frankenberg asserts that the doctrine of dependent relative revocation is applicable because of a mistake, the decedent mistakenly executing a will in which the residuary clause was inadvertently omitted by the draftsman. We disagree that this is a proper case for the application of that doctrine. One would need to rely upon extrinsic evidence in determining the threshold question of whether there had been a mistake. Such is not permitted. As was stated by the Supreme Court in In Re Pratt's Estate, 88 So.2d 499, 503 (Fla. 1956):
There are no conflicting provisions of testamentary papers necessarily before the court [emphasis in original] as in the case of a will and codicils, which might form a basis for the admission of parol evidence for its bearing upon the testamentary intent. We know of no principle of law which would authorize us to look beyond the probated will for testamentary intent in such a case. We do not understand that the "dependent relative revocation" doctrine, useful and salutary as it is in a proper case, carries with it the authority to disregard so well-established a rule as that which forbids us to write a new will for the testator in the face of a clear intent expressed in a proper instrument.
In the much-cited article to which we have alluded, Warren, Dependent Relative Revocation, the author states in part [33 Harv.L.R. at pp. 348-9]:
"A will cannot be set aside for mistake in either the United States or in England where the testator knew and approved its contents. By the same token a revocation absolute on its face, the words of which the testator knows and approves, will not be set aside because the reasons which induced it are found to be based on false assumptions of fact or law. The testator is dead, and it is too dangerous to inquire what motives induced his action. This was to be done for the construction of the document; it should not be resorted to for alteration of it."
See also In Re Lubbe's Estate, 142 So.2d 130 (Fla. 2nd DCA 1962); In Re Estate of Fairley, supra; but cf. In Re Jones, 352 So.2d 1182 (Fla. 2nd DCA 1977).
AFFIRMED.
ERVIN, C.J., and SMITH, J., concur.